UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MILLICENT ALEXIS BUDLONG-SPRINGER, : <br> *Plaintiff* : <br> v. : <br> : <br> CONFLICT RESOLUTION TRAINING, : <br> INC., alias, THE MARKETSPACE, INC., : <br> alias, d/b/a ZATONY, alias, ZATONY, : <br> Inc., alias, and SUSAN DEVENEY, alias, : <br> : <br> *Defendants* : | C.A. No. 20- <br><br> **Jury Trial Demanded** |

## COMPLAINT

### I. Introductory Statement

1. This action is brought by Plaintiff Millicent Alexis Budlong-Springer ("Plaintiff") against her former employers, Conflict Resolution Training, Inc., alias, The Marketspace, Inc., alias, d/b/a Zatony, alias, ZATONY, Inc., alias, and Susan Deveney, alias, seeking compensatory, liquidated, and punitive damages, civil penalties, counsel fees, costs and other equitable relief arising out of violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq*. and the Rhode Island Payment of Wages Act ("RIPWA"), R.I. Gen. Laws § 28-12-1, *et. seq*. and § 28-14-1, *et. seq*.

### II. Parties

2. Plaintiff Millicent Alexis Budlong-Springer is a resident of the City of Cranston, County of Providence and State of Rhode Island.

3. At all times relevant to this action, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA and R.I. Gen. Laws § 28-12-2(5) and § 28-14-1(2) of the RIPWA employed by Defendants.

4. Defendant Conflict Resolution Training, Inc., alias ("Defendant CRT") is a Domestic Profit Corporation duly incorporated under the laws of the State of Rhode Island with a principal office located at 478 Love Lane, East Greenwich, Rhode Island, 02818.

5. Defendant The Marketspace, Inc., alias, d/b/a Zatony, alias ("Defendant Marketspace") is a Domestic Profit Corporation duly incorporated under the laws of the State of Rhode Island with a principal office located at 478 Love Lane, East Greenwich, Rhode Island, 02818.

6. On information and belief, Defendant Marketspace is or was at all times relevant to this action doing business in Rhode Island as Zatony and operating out of 42 Ladd Street, Suite 307, East Greenwich, RI 02818.

7. Defendant ZATONY, INC., alias, (hereinafter "Defendant ZATONY") is a Foreign Profit Corporation duly incorporated under the laws of the Delaware with a principal office located at 42 Ladd Street, Suite 307, East Greenwich, RI 02818 and a place of business located at 478 Love Lane, East Greenwich, Rhode Island, 02818

8. At all relevant times, Defendants CRT, Marketspace, and ZATONY were Plaintiff's employer within the meaning of 29 U.S.C. §§ 203(a) and 203(d) of the FLSA and R.I. Gen. Laws § 28-12-2(7) and § 28-14-1(3) of the RIPWA.

9. At all relevant times, Defendants CRT, Marketspace, and ZATONY jointly employed Plaintiff.

10. Defendant Susan Deveney, alias ("Defendant Deveney") is a resident of the Town of East Greenwich, County of Washington and State of Rhode Island.

11. On information and belief, Defendant Deveney is and was at all relevant times the President and Manager of Defendants CRT, Marketspace, and ZATONY and has a material ownership interest and operational control therein, and was responsible, in whole or in part, for

the wage payment policies, practices, and procedures, and/or the implementation thereof, complained of herein.

12. Unless otherwise specified, the term "Defendants" as hereinafter used shall refer collectively to each and every Defendant named or described in the instant action.

*FLSA Liability Allegations*

13. Defendants are and, at all relevant times, were engaged in related activities performed through unified operation and/or common control for a common business purpose and are, and at all times hereinafter mentioned were, an enterprise within the meaning of 29 U.S.C. § 203(r).

14. At all relevant times, Plaintiff was "engaged in commerce or in the production of goods for commerce" within the meaning of, *inter alia*, 29 U.S.C. §§ 203 (b), (i)-(j), 206(a), and 207(a), in her capacity as an executive assistant employed by and performing work for Defendants.

15. At all relevant times, Defendants individually and/or jointly were an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of, *inter alia*, 29 U.S.C. §§ 203(s).

### III. Jurisdiction

16. This Court has subject matter and supplemental jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1367, 2201, and 2202.

### IV. Venue

17. Venue is proper in this Court insofar as, on information and belief, Defendants reside or may be found in the District of Rhode Island in compliance with the requirements set forth in 28 U.S.C. § 1391. Venue is also proper because all of the acts and/or omissions giving rise to the claims herein occurred in the District of Rhode Island.

## V. Material Facts

### *Defendants' Unlawful Compensation Scheme*

18. On or about April 10, 2019, Defendant CRT hired Plaintiff to perform work as an executive assistant.

19. Plaintiff was hired as a W-2 employee with a salary of $50,000 annually paid on a bi-weekly basis.

20. Immediately upon beginning employment, Plaintiff began and continued to perform work for Defendants CRT, Marketspace, and ZATONY on a daily basis until the end of her employment on or about January 24, 2020.

21. Therefore, Defendants CRT, Marketspace, and ZATONY were joint employers of Plaintiff for the purposes of the FLSA and RIPWA.

22. Plaintiff's job duties included providing administrative support of varying complexity to the Manager and President of Defendants CRT, Marketspace, and ZATONY, Defendant Deveney, managing highly confidential and time-sensitive projects, maintaining a highly complex schedule of project based and work-related tasks and coordinating all components necessary to execute each project, and drafting and preparing documents.

23. Plaintiff was paid normally until August 23, 2019—for the pay period ending on August 17, 2019—when all payment for her services ended.

24. At some time during the week of August 19, 2019, Defendant Deveney approached Plaintiff to tell her that Defendants were approaching a point where they could not afford to pay Plaintiff for her work.

25. Initially, Defendant Deveney asked Plaintiff if she had savings and would be able to "contribute to her salary" for a few months.

26. Plaintiff was in the process of buying a house and so was not in a particularly stable position at that time, but she told Defendant Deveney that she would discuss it with her partner.

27. After considering the issue for a couple of days and having no other option, Plaintiff told Defendant Deveney that Plaintiff could use her savings for a short period.

28. Accordingly, Defendant Deveney requested that Plaintiff essentially loan Defendant Deveney $1500 from her savings each pay period and then Defendants would issue a check for the same amount.

29. On information and belief, Defendant Deveney's proposal was done in a deliberate attempt to avoid liability under the FLSA and RIPWA insofar as Defendants would still be paying Plaintiff, although with Plaintiff's own funds.

30. Defendant Deveney promised Plaintiff that she would eventually be paid back for the money from her savings account and that Defendants would pay Plaintiff her normal salary because Defendants were on track to meet their targets, but did not set a specific date for when Plaintiff would be reimbursed and paid normally.

31. Accordingly, for the next two pay periods beginning on or about August 23, 2019, Plaintiff essentially paid herself for work performed by issuing Defendants, by and through Defendant Deveney, two separate payments of $1,500 each.

32. Defendants, by and through Defendant Deveney, then issued Plaintiff purported payroll checks for those amounts.

33. After two pay-periods, it became readily apparent to Plaintiff that paying herself in the manner requested by Defendant Deveney made little sense because it only delayed Plaintiff's payment of her own bills and made Plaintiff extremely anxious, so Plaintiff informed

Defendant Deveney that she would no longer "loan" Defendants the $1,500 per pay period from her own savings.

34. Therefore, although Plaintiff started working for Defendants without actual compensation on or about August 18, 2019, beginning on September 23, 2019 Defendants did not issue any payroll checks or otherwise feign or pay compensation to Plaintiff.

35. Nevertheless, every week from August 18, 2019 until her separation on January 24, 2020, Plaintiff continued to perform her full work duties for Defendants on a full-time basis while consistently working at least forty-five (45) hours during each of those weeks because Defendant Deveney reassured her that Defendants would eventually compensate Plaintiff for her work.

36. On or about mid-November, Defendants' employees in the Sales Department left the company and the only employees left were Defendant Deveney and Plaintiff.

37. At that time, Defendant Deveney asked Plaintiff if she could work from home, which they both did for the remainder of Plaintiff's employment.

38. On January 22, 2020, Plaintiff and Defendant Deveney met to discuss numerous work issues, which Plaintiff hoped would include payment for all of her unpaid work.

39. After an hour and a half of discussing logistics for Defendants CRT, Marketspace, and ZATONY and redistributing duties, Defendant Deveney finally indicated that Defendants would not be compensating Plaintiff anytime soon.

40. Plaintiff became very upset about continuing to work without getting paid, especially after she was continually reassured by Defendant Deveney that she would get paid and essentially led on to work without payment for almost (6) months.

41. At that point, Defendant Deveney told Plaintiff that she could not pay Plaintiff, but she wanted to offer Plaintiff stock in or a portion of the second company that she operated in,

Defendant Marketspace d/b/a Zatony, but that Plaintiff could not liquidate that "compensation" back to cash any time soon.

42. Plaintiff noted that newly offered interest in lieu of compensation did not amount to the unpaid wages she was owed and declined Defendant Deveney's offer.

43. Defendant Deveney replied that she understood if Plaintiff needed to seek employment elsewhere.

44. On Friday, January 24, 2020, Plaintiff informed Defendant Deveney that she could not continue to work without getting paid and resigned from her employment with Defendants.

45. Throughout the next week, Defendant Deveney continued to text Plaintiff to ask what she was going to do, to which Plaintiff reiterated that she could not work without getting paid.

46. Finally, Defendant Deveney asked Plaintiff to return the work computer, office keycard, and key that were in her possession, which Plaintiff did on January 31, 2020.

47. Plaintiff has not received any compensation for work performed for Defendants for a total of twenty-three (23) weeks from August 18, 2019 through her last day of work on January 24, 2020.

48. Pursuant to her $50,000 agreed-upon annual salary, Plaintiff is owed $22,115.38 for unpaid straight-time work she performed during the twenty-three (23) week period from August 18, 2019 through January 24, 2020.

49. Additionally, in light of the failure or refusal of Defendants to *regularly* pay Plaintiff her legally mandated minimum salary each week between August 18, 2019 through January 24, 2020 as required by 29 C.F.R. §541.602, Plaintiff's employment did not satisfy the

"salary basis" test, and she was therefore a non-exempt employee under the FLSA and the RIPWA.

50. Accordingly, Defendants also failed and/or refused to pay Plaintiff overtime compensation at a rate of time and one-half her regular hourly rate of pay for all hours worked over 40 per week from August 18, 2019 through January 24, 2020.

51. Plaintiff worked at least forty-five (45) hours of each week during the twenty-three (23) week period between August 18, 2019 and January 24, 2020.

52. Plaintiff's hourly rate during each of the above workweeks was $24.04 with an overtime rate of $36.06.

53. Accordingly, Plaintiff is owed at least $4,146.90 in unpaid overtime wages for the five (5) hours of overtime hours worked during each week from August 18, 2019 through January 24, 2020.

### *Plaintiff was an "Employee" of Defendants*

54. Throughout the course of her employment with Defendants, Plaintiff was an employee of Defendants as defined pursuant to the FLSA and RIPWA.

55. Throughout the course of her employment with Defendants, Plaintiff reported to and was supervised by Defendant Deveney.

56. Throughout the course of her employment with Defendants, Plaintiff performed administrative work for Defendants CRT, Marketspace, and ZATONY on a daily basis as directed by Defendant Deveney.

57. At all relevant times, Defendants, by and through Defendant Deveney, established Plaintiff's work schedule.

58. Specifically, Defendants regularly assigned Plaintiff to work every Monday through Friday from 9 a.m. to 5 p.m. and required additional work on the weekend.

59. At all relevant times, Plaintiff was completely dependent upon Defendants to provide her with the work performed for all Defendants.

60. At all relevant times, Defendants had sole or collective authority to hire and fire Plaintiff.

61. At all relevant times, any compensation paid to Plaintiff from Defendants was made via W-2 payroll checks with applicable state and federal deductions.

62. At all relevant times, Defendants were responsible for all financial overhead of Defendants' businesses, including all of its employee's wages.

63. At all relevant times, Plaintiff was not responsible for payment or contributing to the payment of any financial overhead of Defendants' businesses and did not hold any equity or ownership interest in Defendants' businesses.

64. Upon information and belief, Defendants, and not the Plaintiff, paid for all advertising expenses for both companies.

65. Defendants never shared with Plaintiff its business-related profits derived from Defendants.

### *The Individual Defendant's Liability*

66. In her capacity as owner and operator of Defendants CRT, Marketspace, and ZATONY, Defendant Deveney retained and executed operational control over the business and financial affairs of both companies.[1]

67. Defendant Deveney was responsible for hiring employees to work at Defendants CRT, Marketspace, and ZATONY.

68. Defendant Deveney willfully and intentionally created, established, permitted,

---

[1] *See Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007)(corporate officer personally liable because he was instrumental in causing corporation to violate FLSA); *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998); *see also Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991), *and cases cited therein*.

condoned, and enforced a policy requiring Plaintiff to work without pay from August 18, 2019 through January 24, 2020.

69. Defendant Deveney willfully and intentionally created, established, permitted, condoned, and enforced a policy requiring Plaintiff to work without overtime pay from August 18, 2019 through January 24, 2020.

70. At all relevant times hereto, Defendant Deveney knew that Plaintiff was performing straight time and overtime work for which she was not being compensated as alleged herein.

71. Defendant Deveney had the ability to, and did, exert full authority over the policy requiring Plaintiff to work without straight time and overtime pay from August 18, 2019 through January 24, 2020.

72. Defendant Deveney had the ability to change and rectify the policy of Plaintiff working without straight time and overtime pay from August 18, 2019 through January 24, 2020.

73. Defendant Deveney had operational control over all aspects of Defendants' day-to-day business-related functions.

74. Defendant Deveney directed all of Defendants' employment practices, including setting Plaintiff's salary, pay schedule, payroll, and work schedule.

75. At all relevant times, Defendant Deveney had active control and management over Defendants in relation to the employees working there, including Plaintiff.

76. On information and belief, Defendant Deveney is either the sole or partial owner of Defendants CRT, Marketspace, and ZATONY with operational control over both entities and/or otherwise intentionally and/or knowingly profited directly or indirectly from the illegal under-compensation of Plaintiff.

77. Accordingly, Defendant Deveney controlled Defendants' financial affairs and was

responsible for the above described unlawful payment scheme and the failure to compensate Plaintiff with at least the agreed-upon minimum wage and overtime compensation prescribed by the FLSA and RIPWA.

### *Minimum Wage and Overtime Pay Violations*

78. At all relevant times, Plaintiff was a non-exempt employee entitled to payment of a minimum wage under applicable law, wages for all hours worked, and overtime wages as defined under the FLSA and RIPWA.

79. In light of all the relevant facts previously alleged above, Plaintiff accepted employment with Defendants based on an agreed-to salary of $50,000 annually for a forty (40) hour workweek.

80. Plaintiff was entitled to compensation in an amount equal to the agreed-to salary as prescribed by the FLSA and RIMWA for hours worked and overtime compensation equal to one and one-half (1 ½) times the agreed upon regular rate of compensation on an hourly basis.

81. Defendants willfully, intentionally, and repeatedly violated the FLSA and RIPWA by failing or refusing to compensate Plaintiff for all hours in an amount equal to the agreed-upon salary prescribed by the FLSA and RIPWA for straight time hours worked from August 18, 2019 through January 24, 2020 as previously alleged herein.[2]

82. Defendants willfully, intentionally, and repeatedly violated the FLSA and RIPWA by failing or refusing to compensate Plaintiff the legally required overtime pay of one and one-

---

[2] It is black letter law than an employee of a private employer may not "volunteer," in whole or in part, to perform work for his or her employer, insofar as an employee may not waive his or her right to minimum wage and overtime pay due under the FLSA. *See Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 740 (1981); *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697 (1945). Nor may FLSA rights be abridged, waived, or modified by contract or custom. *See Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 602-03 (1944)("***The Fair Labor Standards Act was not designed to codify or perpetuate those customs and contracts which allow an employer to claim all of an employee's time while compensating him for only a part of it.*** Congress intended, instead, to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the Act.  Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights.")(emphasis added; footnote omitted).

half (1 ½) times her regular rate of pay for all hours worked over forty (40) in a workweek for the workweeks from August 18, 2019 through January 24, 2020 as previously alleged herein

### *Work Suffered or Permitted*

83. Defendants are liable for failing or refusing to pay Plaintiff for all hours Plaintiff was "suffered or permitted to work" in any and all workweeks whenever Defendants knew or had constructive knowledge that the work was being performed—regardless of whether the work was requested, authorized, or needed.

84. Defendants knew or had reason to believe that Plaintiff was performing straight time and overtime work for which she was not being compensated from August 18, 2019 through January 24, 2020.

85. As such, Defendants had constructive, if not actual, knowledge that Plaintiff regularly performed straight time and overtime work for which she was not compensated in any amount from August 18, 2019 through January 24, 2020.

86. Nevertheless, Defendants failed or refused to pay Plaintiff the compensation to which Plaintiff was legally entitled under the FLSA and RIPWA.

### *Defendants' Failure to Keep Employment Records*

87. Defendants willfully and repeatedly violated 29 U.S.C. §§ 211(c) and 215(a)(5) of the FLSA by failing to make, keep and/or preserve adequate and accurate records of Plaintiff's wages, hours, and other conditions and practices of employment as prescribed by regulations duly issued pursuant to authority granted under the FLSA and found in 29 C.F.R. § 516.2.

88. At all relevant times, Defendants failed and/or refused to make and/or keep in or about Defendants' premises various records that the RIPWA mandates employers to make and keep, including, but not limited to, the name, address, and occupation of each of its employees,

their rate of pay, the amount paid each pay period to each employee, and the hours worked each day and each work week by each employee.  *See* R.I. Gen. Laws §§ 28-12-12 and 28-14-12.

89. Defendants failed to establish a regular pay period or provide Plaintiff with a statement of the hours worked during each applicable pay period or a record of all deductions made from gross earnings during each pay period together with an explanation of the basis or reason for the deductions.  *See* R.I. Gen. Laws §§ 28-14-2 and 2.1.

## VI.   Claims for Relief

90. Plaintiff incorporates in the counts below the allegations contained in ¶¶1 through 89 above.

### Count One
*Violation of FLSA, 29 U.S.C. § 201, et. seq.*

91. Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to those described herein, violated the FLSA by failing to pay minimum wage and overtime wages as provided therein, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to 29 U.S.C. § 216(b).

### Count Two
*Violation of Rhode Island Payment of Wages Act, R.I. Gen. Laws § 28-12-1, et. seq., and R.I. Gen. Laws § 28-14-1, et. seq.*

92. Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to those described herein, violated the RIPWA by failing to pay minimum wage and overtime wages as provided therein, thereby causing Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I. Gen. Laws § 28-14-19.2 and § 28-14-20.

## VII.   Prayers for Relief

**WHEREFORE,** Plaintiff prays that this Court grant the following relief:

1. A declaratory judgment declaring that the acts and/or omissions of Defendants, including, but not limited to those complained of herein, are in violation of the FLSA and the RIPWA.

2. An injunction directing Defendants to take such affirmative action as is necessary to refrain from such conduct as is necessary to ensure that the effects of these unlawful employment practices are eliminated and not repeated.

3. An award of all unpaid wages and benefits.

4. An award of compensatory damages.

5. An award of punitive damages.

6. An award of liquidated damages pursuant to 29 U.S.C. § 216(b).

7. An award of liquidated damages in an amount two times the amount of wages and and/or benefits owed pursuant to R.I. Gen. Laws § 28-14-19.2 and § 28-14-20.

8. An award of reasonable attorney's fees and costs of litigation pursuant to 29 U.S.C. § 216(b).

9. An award of reasonable attorney's fees and costs pursuant to R.I. Gen. Laws § 28-14-19.2.

10. An award of other appropriate equitable relief or penalties pursuant to R.I. Gen. Laws § 28-14-19.2.

11. An award of such other and further relief as this Honorable Court deems just and proper.

## VIII. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all counts so triable.

## IX. Designation of Trial Counsel

Plaintiff hereby designates Danilo A. Borgas, Esquire, as trial counsel.

|  |  |
|---|---|
|  | Plaintiff,<br>By her attorneys,<br>**SINAPI LAW ASSOCIATES, LTD.** |
| **Date:  May 7, 2020** | /s/ **Danilo A. Borgas**<br>**Danilo A. Borgas, Esq. (#9403)**<br>**Richard A. Sinapi, Esq. (#2977)**<br>2374 Post Road, Suite 201<br>Warwick, RI 02886<br>Phone: (401) 739-9690; FAX: (401) 739-9040<br>dab@sinapilaw.com<br>ras@sinapilaw.com |